Case 2:07-cv-01644-JS-MLO   Document 24   Filed 04/16/2008   Page 1 of 17

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   APR 16 2008   ★

LONG ISLAND OFFICE

## UNITED STATES DISTRICT COURT
## DIVISION OF EASTERN NEW YORK

County of Suffolk

Plaintiff,

v.

GEORGE R. SIMPSON, JEAN SIMPSON,
CHARLOTTE SIMPSON, OFFICE
MANAGEMENT SYSTEMS CORP., SUFFOLK
RESEARCH SERVICE, INC.

Defendant

CV-07-1644
Seybert, J.
Orenstein, M.

ANSWER AND COUNTERCLAIM

COME NOW, the Defendants, George R. Simpson and Jean S. Simpson, Pro Se, and file this answer and counterclaim to Plaintiff's AMENDED COMPLAINT, respectfully allege upon information and belief as follows:

1. Admit that Plaintiff purports to seek declaratory and injunctive relief and monetary damages against Defendants, George R. Simpson and Jean S. Simpson under the copyright laws of the United States, and except as so admitted, deny the allegations contained in paragraph 1 of the Complaint.

2. Admit that the Court has jurisdiction pursuant to 28 U.S.C. §1338. Deny that there has been any violation of the Copyright laws of the United States by Defendants George R. Simpson and Jean S. Simpson.

3. Admit that Defendants George R. Simpson and Jean S. Simpson reside in New York State and that Venue is proper pursuant to 28 U.S.C. §1400.

4. Neither Admit nor Deny allegations contained in paragraph 4 of the Complaint.

5. Admit George R. Simpson is a resident of Town of Southampton, County of Suffolk, State of New York.

6. Admit Jean S. Simpson is a resident of Town of Southampton, County of Suffolk, State of New York.

7. Deny that Charlotte Simpson is a resident of Town of Southampton, County of Suffolk, State of New York.

8. Admit that Office Management Systems Corp. is a Corporation organized pursuant to the laws of the State of New York. Deny that Office Management Systems Corp. has offices at 425 County Road 39A, Southampton, N Y and 33 Flying Point Road, Southampton, NY. Its offices are now at PO Box 775, Hampton Bays, NY.

9. Admit that Suffolk Research Service, Inc. is a Corporation organized pursuant to the laws of the State of New York. Deny that Suffolk Research Service, Inc. has offices at 33 Flying Point Road, Southampton, NY. Its offices are now at PO Box 775, Hampton Bays, NY.

10. Deny allegations contained in Paragraph 10 of the Complaint.

11. Neither admit nor Deny allegations contained in Paragraph 11 of the Complaint.

12. Neither admit nor Deny allegations contained in Paragraph 12 of the Complaint.

13. Neither admit nor Deny allegations contained in Paragraph 13 of the Complaint.

14. Neither admit nor Deny allegations contained in Paragraph 14 of the Complaint.

15. Neither admit nor Deny allegations contained in Paragraph 15 of the Complaint.

16. Deny allegations contained in Paragraph 16 of the Complaint.

17. Deny allegations contained in Paragraph 17 of the Complaint.

18. Deny allegations contained in Paragraph 18 of the Complaint.

19. Deny that Defendants Wrongfully and for personal or financial gain operate websites which encourage the misappropriation of plaintiff's proprietary information. Admit that copies of website material are attached to Complaint as Exhibit "B" and Exhibit "C".

## ANSWERING THE FIRST JUDGEMENT DEMAND

20. Defendants repeat and reallege each and every allegation contained in paragraph 1 through 19 of its answer herein above stated, and, except as so admitted, deny each and every allegation contained in paragraph A of the Complaint.

## ANSWERING THE SECOND JUDGEMENT DEMAND

21. Defendants repeat and reallege each and every allegation contained in paragraph 1 through 20 of its answer herein above stated, and, except as so admitted, deny each and every allegation contained in paragraph B of the Complaint.

## ANSWERING THE THIRD JUDGEMENT DEMAND

22. Defendants repeat and reallege each and every allegation contained in paragraph 1 through 21 of its answer herein above stated, and, except as so admitted, deny each and every allegation contained in paragraph C of the Complaint.

## ANSWERING THE FORTH JUDGEMENT DEMAND

23. Defendants repeat and reallege each and every allegation contained in paragraph 1 through 22 of its answer herein above stated, and, except as so admitted, deny each and every allegation contained in paragraph D of the Complaint.

## ANSWERING THE FIFTH JUDGEMENT DEMAND

24. Defendants repeat and reallege each and every allegation contained in paragraph 1 through 23 of its answer herein above stated, and, except as so admitted, deny each and every allegation contained in paragraph E of the Complaint.

## FIRST AFFIRMATIVE DEFENSE

25. The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

26. Defendants George R. Simpson and Jean S. Simpson, should it be determined that Copyright infringement occurred, were forced to continue to sell out of date tax maps as a part of their software by the extortionist activities of Plaintiff, which ultimately forced Defendant Corporations out of business.

27. Plaintiff's extortionist demands are explained in Exhibit "A", attached hereto in form of a letter dated March 1, 2005 to Penny Wells LaValle from George R. Simson, President and Chairman of the Board of Office Management Systems Corp.

28. The letter points out that the demands of Plaintiff are tantamount to a Conspiracy of Plaintiff with Defendant's monopolistic competitor, First America Real Estate Solutions, to force Defendant Corporations out of business.

29. Plaintiff used, and continues to use its enormous financial resources to force Corporate Defendants, Suffolk Research Service, Inc. and Office Management Systems Corp. out of business.

30. As a result of Plaintiff's extortionist demands, Corporate Defendants, Suffolk Research Service, Inc. and Office Management Systems Corp. no longer copy or obtain copies of current tax maps, and no longer offer tax maps as a part of their software products and services.

3

31. Without having these tax maps to offer, Corporate Defendants, Suffolk Research Service, Inc. and Office Management Systems Corp. are no longer able to compete, and their business has slowed to only a trickle of their previous size.

32. Ms Penny Wells LaValle's extortion demands were so absurd, that she insisted that the two corporate defendants in the instant lawsuit pay twice as much in license fees as were paid by the Giant Competitor, First American. Ms LaValle wanted to charge the corporate defendants in the instant lawsuit the same price as she charged First American, when First American used the data from all 10 towns in Suffolk County, and Suffolk Research Service, Inc./Office Management Systems Corp used only tax maps from the five eastern towns.

33. The five eastern towns constitute less than 50% (fifty percent) of the tax map data from the entire county.

34. Ms LaValle's, "do it my way, I'm the boss" attitude constitutes gross abuse of her authority, and caused Defendants in the instant lawsuit to encounter enormous damages.

### THIRD AFFIRMATIVE DEFENSE

35. The property taxmaps consist of facts, which are not subject to copyright protection under the copyright laws of the United States.

### FORTH AFFIRMATIVE DEFENSE

36. The taxmaps, as alleged in the Complaint, consist of a selection, organization and arrangement of facts, which are dictated by the New York State law and regulations, cartographic convention and other outside constraints, and which are not subject to copyright protection.

### FIFTH AFFIRMATIVE DEFENSE

37. The taxmaps are not subject to copyright protection, because, inasmuch as State law and regulation requires that each county produce tax maps, copyright law does not provide an "economic incentive" for the creation of these maps.

### SIXTH AFFIRMATIVE DEFENSE

38. The taxmap formats are in the public domain.

### SEVENTH AFFIRMATIVE DEFENSE

39. New York State "Freedom of Information Law"(FOIL) provides free access for "at cost of reproduction" of all information in the hands of any government body

4

including Suffolk County. FOIL provides for certain exceptions, none of which includes the "Suffolk County Tax Maps" produced by Plaintiff.

40. Exhibit "B" is an opinion from the New York State Department of State, Committee on Open Government which supports Defendants position on Plaintiff's Copyright infringement.

## COUNTERCLAIMS

41. Defendants, acting Prose, George R. Simpson and Jean S. Simpson, for their counterclaims against Suffolk County, and against Penny Wells LaValle, who Defendants move to Join to this lawsuit, respectively allege as follows:

### Nature of Counterclaim:

42. By their counterclaims, the Defendants George R. Simpson and Jean S. Simpson seek the following relief:

> (a). A declaration dismissing this lawsuit against Defendants George R. Simpson and Jean S. Simpson who were subjected to extortion and gross abuse of authority by New York State/Suffolk County public officers, requiring Defendants to encounter enormous losses.

> (b). A declaration that copyright registration by Suffolk County of the "Suffolk County Tax Maps" is invalid, and an order canceling said copyright registration.

Jurisdiction: Con...

43. This Court's jurisdiction over the counter claim is premised upon the Declaratory Judgement Act, 28 U.S.C. § 2201 et seq. in that there is an actual, existing and substantial justifiable controversy between the parties.

**The Relevant Facts:**

44. Defendants were harassed, subjected to extortion and extreme abuse of power by Public Employees of the State of New York/Suffolk County.

45. Pursuant to statute, rule and regulation, Suffolk County is required to prepare official tax maps.

46. Specifically, provisions of New York Real Property Tax Law ("RPTL") § 503(2), which states that "each county, except a county wholly within a city, shall prepare and maintain in current condition for each city and town therein a tax map approved by the state board," apply to Suffolk County.

47. Pursuant to RPTL § 503(2), the New York State Office of Real Property Services ("ORPS") is required to promulgate rules and regulations establishing "standards, specifications and procedures for the preparation and maintenance of tax maps and shall approve tax maps which satisfy such requirements."

48. Suffolk County is subject to and governed by the ORPS Regulations.

49. Among other things, the ORPS Regulations prescribe the size and format of "base manuscripts;" the scale and map sheet size of section maps; blocks, lots and tax map land parcel numbers; identification of major bodies of water; and specific techniques to be used if tax maps are converted to digital format.

50. "Suffolk County Tax Maps" formats contain all information required by ORPS Regulations.

51. Any remaining attributes of the "Suffolk County Tax Maps" Formats are dictated by standard cartographic conventions.

52. The "Suffolk County Tax Maps" are prepared using funds provided by taxpayers, and therefore should be available for use by taxpayers.

### AS AND FOR A FIRST COUNTERCLAIM

53. Defendants/Counterclaimants repeat and reallege each and every allegation contained in paragraphs 41 through 52 with the same force and effect as if repeated herein at length.

6

54. There is simply no evidence that George R. Simpson and Jean S. Simpson violated any copyright owned or claimed to be owned by Plaintiff.

## AS AND FOR A SECOND COUNTERCLAIM

55. Defendants/Counterclaimants repeat and reallege each and every allegation contained in paragraphs 41 through 54 with the same force and effect as if repeated herein at length.

56. Those elements of "Suffolk County Tax Maps" Format created pursuant to New York State statutes, rules and/or regulations, including but not limited to the RPTL and the ORPS regulations, lack sufficient originality to be copyrightable.

57. Those elements of "Suffolk County Tax Maps" Format created pursuant to standard cartographic conventions lack sufficient originality to be copyrightable.

58. As a whole, the "Suffolk County Tax Maps" lack sufficient originality to be copyrightable.

## AS AND FOR A THIRD COUNTERCLAIM

59. Defendants/Counterclaimants repeat and reallege each and every allegation contained in paragraphs 41 through 58 with the same force and effect as if repeated herein at length.

60. Plaintiff, Suffolk County, and specifically Public Officer, Penny Wells LaValle subjected Defendants George R. Simpson and Jean S. Simpson to deliberate and malicious extortive demands, which were so enormous they all but caused Defendants' companies (Suffolk Research Service, Inc. and Office Management Systems Corp.) to go out of business.

61. Furthermore, Plaintiff filed two malicious lawsuits naming Defendants' children as defendants as harassment tactics, even though Plaintiff and Public Officer, Penny Wells LaValle, knew that Defendants' children were not liable for any of Plaintiff's claims under the law.

**WHEREFORE**, Defendants George R. Simpson and Jean S. Simpson respectfully request that the Court enter judgement as follows:

(a) Approve the joining of Penny Wells LaValle, Personally, and as Director of Suffolk County Government, Real Property Division as litigant in this lawsuit.

7

(b) Dismiss this lawsuit against Defendants, since Plaintiff's claims have no basis in fact or law;

(c) Make a declaration that the copyright registration of Suffolk County of the "Suffolk County Tax Maps" Format is invalid, and an order canceling said copyright registration;

(d) Dismiss the Complaint with prejudice;

(e) Award the Defendants/Counterclaimants their costs of suit, including reasonable attorney's fees and cost of business due to Plaintiff's actions;

(f) and for such other, further and different relief as to the Court seems just and proper.

GEORGE R. SIMPSON, PRO SE

JEAN S. SIMPSON, PRO SE

DATED:  April 10, 2008

(Original service on 10th day of April with wrong Case Number)

By: _____
George R. Simpson

By: _____
Jean S. Simpson

PO Box 775
Hampton Bays, NY  11946
Phone:  631-357-9502

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the foregoing pleading was served by mailing the same, postage prepaid, by hand delivery or by facsimile on the 15th day of April, 2008. (Original service on 10th day of April with wrong Case Number)

To:     Christine Malafi
        Suffolk County Attorney
        H. Lee Dennison Building
        100 Veterans Memorial Highway
        P.O. Box 6100
        Hauppauge, NY  11788

        Attn: Leonard G. Kapsalis, Esq.
        Suffolk County Department of Law

Via:  Mail [XX]  Fax [   ]  Hand [   ]

Address of the Court Clerk:
Mr. Robert C. Heinemann, Clerk of the Court
United States District Court
Eastern District of New York
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722

9

March 1, 2005

Penny Wells LaValle
Director
Suffolk County Government
Real Property Division
300 Center Drive
Riverhead, New York 11901-3398

Dear Ms LaValle:

This letter will confirm the conversation I had with you over the phone and the various discussions you had with Stephanie Fagan over the phone and at your office.

Stephanie and I have been talking with you in hopes that we could work out an arrangement to license the use of the tax maps your department maintains for Suffolk County.

We understand that the largest of our competitors, First American Real Estate Solutions, has negotiated a license for the use of these maps. I understand that, as is the position of our companies, First American does not believe that Suffolk County has a right to license these maps, because they should be available at the cost of reproduction in accordance with the NY State Freedom of Information Law.

Nevertheless, in order to avoid expensive and time-consuming litigation, like First American, our companies would be willing to sign a license agreement and pay a royalty. The royalty must, however, be commensurate with the relative sales and use of the maps by our two companies – as compared with the Suffolk County Maps use and sales of First American.

When Stephanie Fagan met with you, she gave you a copy of the attached documents (*"OMS and SRS Appraise@ Licenses"*, and *"Exhibit 1"*) These documents made certain disclosures about the sales of Suffolk Research Service, Inc., Office Management Systems Corp., and First American Real Estate Solutions.

The summary of the position of Suffolk Research Service, Inc (SRS).and Office Management Systems Corp.(OMS) is summed up in the following paragraph taken from the document given to you by Stephanie:

> *"Based upon the fact that OMS/SRS only uses about 20% of the maps and the size of OMS/SRS is only 1% of the size of First American Real Estate Solutions, $60,000 in license fees from First American Real Estate Solutions would be $120/year for OMS/SRS licensee fees"*

In our meetings and discussions, you were unable or unwilling to provide us any price for licenses other than:

> *"$60,000 the first year, $40,000 the second year ...."*.

You tell us that this is the same price paid by First American Real Estate Solutions.

We know you offered this same gigantic fee to our competitor, Geo Data Plus, and we have a copy of the proposal you sent them.

Such prices are simply out of the question. Our companies do not have income to support those fees. If we paid that high a fee, it would put our companies out of business.

We believe that this type of pricing is tantamount to a conspiracy by you and Suffolk County with our "gigantic" competitor, First American Real Estate Solutions, to force us out of business.

We have to have the use of the Tax Maps to compete in a monopolistic market dominated by First American Real Estate Solutions, but license fees equal to what they pay will literally put us out of business.

Should you persist in your efforts to force these fees upon us, we will have no choice but to hold you personally liable under the New York Statute, which requires you to work within your scope of authority, under the penalty of personal liability for our damages due to you not doing so.

Finally, you are singling us out, when other of our competitors are using "your" tax maps without a license.

Please reconsider your policy and negotiate a fair license fee with us.

Very truly yours,

George R. Simpson
CEO, Chairman of the Board and President

OMS and SRS Appraise@ Licenses:

The Appraise@ and the XFer Data Browser setup programs install a Folder in the Customer's computer named "SRSmaps". That folder has slightly less than 1200 TIF image files, one for each "taxmap page" in the five eastern towns of Suffolk Country (East Hampton, Southampton, Riverhead, Southold, and Shelter Island).

According to the Suffolk County, there are 4600 taxmap pages in all of Suffolk County. Therefore, the eastern five towns represent 26.1% of the total (1200/4600). On a parcel basis, the 1200 taxmaps represent 112,275 parcels of a total of 500,000 parcels (22.4%) in Suffolk County.

The attached Exhibit 1 shows the total Office Management Systems Corp. and Suffolk Research Service, Inc. license revenue for the years 2002, 2003, and 2004.

The main use of Appraise@ software is to provide a database of real estate listings and pictures, print them out in various forms. Taxmaps is one of 20 other major functions also provided by Appraise@.

The purpose of the XFer Data Browser is to accomplish searches in the SRS database of Xfer records. The taxmaps are provided as an "extra".

Note that total Appraise@ license sales in 2004 were $103,451. SRS sales for the XFer Data browser(uses Taxmaps) were $1,375.

First American Real Estate Solutions resells all 4,600 of the Suffolk County Taxmaps, not just the maps of the five eastern towns.

It is estimated that First American Real Estate Solutions has license (database and software) sales of Suffolk County Maps and Data which are 100 times that of OMS and SRS combined. This data company dwarfs all other companies in the field.

Based upon the fact that OMS/SRS only uses about 20% of the maps and the size of OMS/SRS is only 1% of the size of First American Real Estate Solutions, $60,000 in license fees from First American Real Estate Solutions would be $120/year for OMS/SRS licensee fees.

**Note:**
Confidential Information supplied by Office Management Systems Corp. and Suffolk Research Service, Inc. for the use only by the Real Property Tax Service Agency, County of Suffolk, New York in the pricing of a taxmap license.

Office Management Systems Corp.
Suffolk Research Service, Inc.
PO Box 775
Hampton Bays, NY 11946
631-204-0207

## EXHIBIT 1

## OMS Software Unit Sales and Revenue of all products which use Suffolk County TAXMAPS

| License Type | 2004 Units Dollars | | 2003 Units Dollars | | 2002 Units | |
|---|---|---|---|---|---|---|
| New Office Licenses | 11 | $15,300 | 3 | $4,500 | 28 | $27,165 |
| New WkStation Lic's | 70 | 24,480 | 43 | 12,710 | 300 | 59,387 |
| Renewal Off Lic's | 30 | 24,660 | 28 | 19,800 | 18 | 11,937 |
| Renewal WkSt Lic's | 219 | 39,011 | 196 | 29,472 | 162 | 17,762 |
| Total | 330 | $103,451 | 270 | $66,482 | 508 | $116,251 |

Note:  OMS license prices are based upon the following pricing:  $1,800 for 1st year for each real estate office having Appraise@ software installed – $900 for each year after the 1st year. $360 for each workstation over one workstation per office for the 1st year and $180 per workstation thereafter.  (Three or four customers pay half these rates because they do not use the "listing" functions of Appraise@).  Some of the WkStation licenses are with the Real Estate agents (home units) who work for Real Estate agencies.

The main use of Appraise@ software is to provide a database of real estate listings and pictures, print them out in various forms.  Taxmaps is one of 20 other major functions also provided by Appraise@.

### SRS use of Taxmaps:

All of the OMS Appraise@ customers also use the XFer Data Browser which is occasionally sold separately to SRS customers with taxmap data for a one time fee of $125.  (4X$125 in 2003, and 11X$125 in 2004).

*Note:*
Confidential Information supplied by Office Management Systems Corp. and Suffolk Research Service, Inc. for the use only by the Real Property Tax Service Agency, County of Suffolk, New York in the pricing of a taxmap license.

Office Management Systems Corp.
Suffolk Research Service, Inc.
PO Box 775
Hampton Bays, NY  11946
631-204-0207



( Exhibit "B" )



**STATE OF NEW YORK**
**DEPARTMENT OF STATE**
**COMMITTEE ON OPEN GOVERNMENT**

41 State Street, Albany, New York 12231
(518) 474-2518
Fax (518) 474-1927
http://www.dos.state.ny.us/coog/coogwww.html

FOIL-AO-15695

December 19, 2005

The staff of the Committee on Open Government is authorized to issue advisory opinions. The ensuing staff advisory opinion is based solely upon the facts presented in your correspondence.

Dear

We are in receipt of the copy of your October 26, 2005 response to Ms. Carolyn Foley's appeal of a denial of her request for GIS data that is reflected on the Nassau County website. Although it was not requested, we offer the following opinion regarding a government claim that GIS material may be protected by copyright.

While we are not experts on the subject of copyright, based on the only judicial decision of which we are aware, Nassau County GIS data may not be subject to a copyright claim. In that case, County of Suffolk v. Experian Information Solutions, Inc., it was initially determined that the County could properly claim copyright protection for the tax maps that it prepared (U.S. District Court, SDNY, 99 Civ.8735, May 15, 2000). On reargument, the District Court reversed its prior holding and found that such a claim could not be made (U.S. District Court, SDNY, July 21, 2000).

On appeal, the Second Circuit Court of Appeals held that in general, New York State, local government, and Suffolk County may claim a copyright protection under the Copyright Act. In contrast to the Federal Government, which is prohibited from obtaining copyright protection for its works (17 USC §105), the Second Circuit found that "the Copyright Act is silent as to the rights of states or their subdivisions" and that "[b]y specifying a limitation on ownership solely against the federal government, the Copyright Act implies that states and their subdivisions are not excluded from protection under the Act." County of Suffolk v. First American Real Estate, 261 F.3d 179, 187 (2nd Cir. 2001).*

creative to qualify for copyright protection, or whether the content and
the form of the maps were dictated by state law and regulation and thus
not subject to copyright protection. Further, the Second Circuit opined, it
would be for the District Court to determine whether the tax maps were
in the public domain from inception, and thus outside the coverage of
the Copyright Act. To make this determination, the District Court would
have to consider, most importantly, whether the County needed the
economic incentive of the Copyright Act to create the maps, or whether
it had adequate incentives or obligations to produce their respective
materials.

The Second Circuit Court then turned to the issue of whether the
Freedom of Information Law continued to impose an obligation on the
County to make the maps available for public inspection and copying,
and confirmed that the County's responsibility to make all records
available for public inspection and copying applied to maps which may
be protected by copyright. The Court further opined that:

"Suffolk County also cannot restrict the subsequent dissemination of its
work completely. First, the Copyright Act 'protects only the form of
expression and not the ideas expressed.' New York Times Co. v United
States, 403 US 713, 726 n. *, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971)
(Brennan, J., concurring); .... Second, the fair use doctrine, codified in
section 107 of the Copyright Act, strikes a balance between the rights of
a copyright holder and the interest of the public in disseminating
information.... The fair use doctrine 'permits [and requires] courts to
avoid rigid application of the copyright statute when, on occasion, it
would stifle the very creativity which that law is designed to foster.'
Campbell v. Acuff-Rose Music, Inc., 510 US 569, 577, 114 S.Ct. 1164,
127 L.E.2d 500 (1994) (internal quotation marks omitted)." Id., at 193.

Following remand to the District Court, litigation was settled, and the
court, therefore, never determined the issue of whether the maps were
sufficiently original and creative to validly claim copyright protection.

Conditioning the release of copies on contractual agreements governing
future treatment of the copies, in our opinion, would thwart the very
purpose and intent of the Freedom of Information Law. It is our belief
that when materials are accessible under the Freedom of Information
Law, upon receipt of the appropriate fee, they must be released to the
applicant without restriction. Accordingly, in keeping with the Second
Circuit decision in County of Suffolk, we advise that it is permissible for
the County to notify the applicant that the materials may be subject to
copyright protection, but that the County cannot condition access on a
contractual obligation pertaining to redisclosure of records accessible to

Welcome to the Committee on Open Government

any member of the public.

Finally, we note that your letter advises Ms. Foley that there is a $45 cost of reproduction of the material onto a compact disc.

With respect to clerical or other costs associated with responding to a request for copies of records, the specific language of the Freedom of Information Law and the regulations promulgated by the Committee on Open Government indicate that, absent statutory authority, an agency may charge fees only for the reproduction of records. In addition to §87(1)(b) of the Law, the regulations state in relevant part that:

"Except when a different fee is otherwise prescribed by statute:
(a) There shall be no fee charged for the following:
(1) inspection of records;
(2) search for records; or
(3) any certification pursuant to this Part" (21 NYCRR 1401.8)."

Further, §1401.8(c)(3) states in relevant part that "the actual reproduction cost...is the average unit cost for copying a record, excluding fixed costs of the agency such as operator salaries."

Based upon the foregoing, we believe that a fee for reproducing electronic information would involve the cost of computer time, plus the cost of an information storage medium (i.e., a computer tape or disk) to which data is transferred.

Lastly, although compliance with the Freedom of Information Law involves the use of public employees' time, the Court of Appeals has found that the Law is not intended to be given effect"on a cost-accounting basis", but rather that "Meeting the public's legitimate right of access to information concerning government is fulfillment of a governmental obligation, not the gift of, or waste of, public funds" [Doolan v. BOCES, 48 NY 2d 341, 347 (1979)].

Thank you for your consideration of these issues. A copy of this opinion will be forwarded to Ms. Foley.

Sincerely,

Camille S. Jobin-Davis
Assistant Director

CSJ:tt

cc: Carolyn K. Foley







11722

0000

Simpson
PO Box 775
Hampton Bays NY 11946

Clerk of the Court
US District Court
100 Federal Plaza
Central Islip NY 11722