THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

—————————————————————————x

COUNTY OF SUFFOLK, NEW YORK,

                      Plaintiff,

     v.

GEORGE R. SIMPSON, JEAN SIMPSON,
CHARLOTTE SIMPSON, OFFICE
MANAGEMENT SYSTEMS CORP., and
SUFFOLK RESEARCH SERVICE, INC.,

        Defendants/Counterclaim-Plaintiffs.
—————————————————————————x

Index No.: 07-CV-1644

Honorable Joanna Seybert

Judge Magistrate Michael L. Orenstein

### DEFENDANTS' ELECTRONIC DATA AND RULE 26(f) REPORT

*<u>Although the parties have exchanged and commented on the issues herein enumerated, defendant corporations' counsel did not receive from plaintiff's counsel either comments on this version or approval to file in this form. Thus, although defendants believe this report fairly sets forth plaintiff's positions, it is only signed by defendants' counsel.</u>*

Pursuant to Federal Rule of Civil Procedure 26(f), defendant corporations and plaintiff had an in-person conference on July 2, 2007 at 11:00 A.M. The conference was attended by Leonard G. Kapsalis, Esq., of the County of Suffolk, and Richard Todd Hunter, Esq., attended on behalf of Defendants and Counterclaim-Plaintiffs Management Systems Corp., and Suffolk Research Service, Inc. (collectively "Defendants").

Subsequent to the in-person conference, Counsel for Plaintiff, and Counsel for Defendants, also exchanged emails.

A further conference attended by Leonard G. Kapsalis, Esq., of the County of Suffolk, and Richard Todd Hunter, Esq., on behalf of Defendants, was held on August 14, 2008.

1

## SUMMARY OF CONFERENCE

In accordance with Rule 26(f), the parties began the conference by briefly addressing the nature of the claims brought and the possibility of prompt settlement and exchanged initial disclosures pursuant to Rule 26(a)(1). In subsequent email, Counsel for Defendants submitted a proposed discovery schedule to Counsel for Plaintiff. Counsel for Plaintiff, except for few modifications, agreed to the proposed schedule.

## PLAINTIFF'S CLAIMS

Counsel for Plaintiff referenced the complaint citing claims for actual damages pursuant to 17 USC §504 for violation of US Copyrights.

## DEFENDANTS' CLAIMS

Defendants have counterclaimed against Plaintiff for conscious anti-competitive conduct in violation of 15 USC §§1 and 2, the Sherman Act, and for creation of monopoly or the circumstances in which a monopoly could be established or maintained in violation General Business Law §340, the Donnelly Act.  Defendants seek declaratory judgment invalidating the copyrights, treble actual damages, and reasonable attorney fees and costs. Counsel for Defendants did not discuss the damages sought by Defendants because Counsel for Defendants prioritized discussion of settlement.

## POTENTIAL FOR PROMPT SETTLEMENT

The parties had meaningful discussion concerning settlement and will continue to communicate before this Court's Ordered August 20, 2008, Conference, for additional discussion. Counsel discussed the possibility of seeking Court sponsored mediation. However, Counsel for Defendants felt that mediation was unnecessary as the parties could likely agree on a settlement amount without the use of an independent third-party. Counsel for Defendant also pointed out that meritoriousness of Defendants defenses and claims hinged upon facts which would be disclosed during discovery.

**PRESERVATION OF POTENTIALLY DISCOVERABLE MATERIAL**

Plaintiff represented that all discoverable material within his custody, possession or control was being preserved in accordance with his obligations. Defendants also have represented that all discoverable material within their custody, possession, or control was being preserved in accordance with their obligations. Issues relating to electronically stored information are discussed below in this report.

Counsel for all parties has advised their clients of their duties to preserve materials.

**SUBJECTS ON WHICH DISCOVERY MAY BE NEEDED AND THE DISCOVERY DEADLINE**

**PLAINTIFF'S DISCOVERY SUBJECTS**

Plaintiff's subjects of discovery include: the allegations and claims set forth in the complaint; communications and sales with third parties by Defendants; the statements, allegations, and admissions made in Defendants' answer/counterclaims; and, Defendants' alleged counterclaims.

Plaintiff reserves the right to conduct such additional discovery as may be needed based on information obtained during the course of discovery or otherwise.

**DEFENDANTS' DISCOVERY SUBJECTS**

Defendants will seek discovery with regard to the following issues, among others that may arise depending on the admissions and denials and defenses presented by Plaintiff in his answer to Defendants' counterclaim:

- Support for Plaintiff's allegations in the pleadings;
- Plaintiff's communications with third-party vendors in connection with the licensing of its tax maps;
- Plaintiff's pricing for third-party tax map licenses;

3

- Plaintiff's contracts with third-party licensees;

- Plaintiff's intergovernmental communications concerning the tax map system;

- Plaintiff's political relationships with third-party licensees;

- Plaintiff's communications with the US Copyright Office;

- Plaintiff's use of independent contractor and employee surveyors, engineers, draftsman, etc., in the development, and maintenance of the tax map system; and

- Plaintiff's claims for damages.

Defendants reserve the right to conduct such additional discovery as may be needed based on information obtained during the course of discovery or otherwise.

## ISSUES RELATING TO DISCLOSURE OR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

By email dated July 28, 2008, Counsel for Defendants informed Defendants to preserve all electronic data. On the same date, Counsel for Defendants also emailed Defendants ABA Forms, 1.1 Gen Prelim Elec Evid Questions for Client, 1.2 Checklist to Define Scope of Electronic Discovery, 1.4 Checklist of Sources for Elec Evidence, 1.5 Desktop Info, 1.6 Server Info, and 1.7 Identification of Key IT Personnel. These forms were to serve as guidelines for Defendants in producing their electronic data disclosure for Plaintiff.

By email dated July 28, 2008, the above listed ABA Forms were also emailed by Counsel for Defendants to Counsel for Plaintiff. These forms were to serve as guidelines for Plaintiff in producing its electronic data disclosure for Defendants.

By email dated August 2, 2008, Defendants provided Counsel for Defendants with Defendants electronic data disclosure. By email dated August 11, 2008, Counsel for Defendants provided Plaintiff with Defendants' electronic data disclosure.

**Defendants' Electronic Data Disclosure**

**Personnel Using/Maintaining the Electronic Data Systems:**

The computers and data systems used by Suffolk Research Service, Inc. (SRS) and Office Management Systems Corp. (OMS) are used exclusively by its two owners, George R. Simpson and Jean S. Simpson.

**Description of the Hardware and Software Systems used by SRS and OMS:**

The companies (SRS and OMS) own two primary personal computers. These are "IBM Clones" using Microsoft XP as an operating system. Each of the two computers has a hard disk, floppy disk drive, and a CDROM drive. Each of the two computers has a USB connected 120 Gig backup drive.

The company also owns two lap top computers, each having a hard drive and CDROM. All four computers are connected by a ETHERNET network using hardwire conductivity and wireless for the two lap top computers to be connected to the other computers and the Internet.

The companies keep their books and billing records on the computer used by Jean Simpson, and "Quick Books" is used as an accounting system. Microsoft Word is used for business documents and correspondence.

None of the companies' data is encrypted. The code for the VB 6 programs which the companies use in their business is kept in the computer used by George Simpson.

The companies have no "inaccessible" data, but its customer records are confidential. The companies maintain one online PC which is a "mirror-image" of George R. Simpson's computer, and it has four or five old (not now used) computers.

Copies of the Suffolk County TaxMap data may be found in all of the companies' computers. The company does not use CDROMs, floppy discs, or any other form of offline

storage for its records and data.  CDROMs are used for installation of the companies' software and data on its customers' computers.

Email accounts used by the company are accessed through www.yahoo.com and using Microsoft Office Outlook software.

**Description of the Websites operated by SRS and OMS:**

The companies own and operate four websites:

1. www.suffolkresearch.com;

2. www.eastendlistings.com (also called www.hamptonslistings.com and

   www.northforklistings.com);

3. www.hamptongeeks.com; and

4. www.eastendcomps.com.

Suffolk County TaxMap data is not stored or accessed on any of these websites.

The companies use landline telephones and cell phones supplied by Optimum Online and by Verizon.

## Electronic Data Preservation Protocol and Standard for Discovery of Electronic Documents

At an in-person conference on August 14, 2008, Defendants provided Plaintiff with copies, signed by Counsel for Defendants, of, (1) Electronic Data Preservation Protocol, (2) Standard for Discovery of Electronic Documents, and (3) a Confidentiality Stipulation and Protective Order (addressed below in the Issues Relating to Claims of Privilege or of Protection as Trial Preparation Material section).

**Electronic Data Preservation Protocol**

**1.** As used herein, the term "potentially discoverable electronic information" refers to Defendant's and Plaintiff's electronic "documents" that contain or potentially contain information relating to facts at issue in the litigation, where the term "documents" is used as it is defined in Fed. R. Civ. P. 34(a).

**2.** During the pendency of these actions, the Defendant and the Plaintiff shall securely maintain, to the extent that they currently exist and may contain potentially discoverable electronic information: (1) e-mail backup tapes and (2) network backup tapes (together, the "Backup Tapes") created in the ordinary course of business during the period from January 1, 2000, through March 1, 2008. The Defendant and the Plaintiff shall be obligated to retain only one day's Backup Tapes among all Backup Tapes created in the ordinary course during a given month, provided that such day's Backup Tapes represent a complete backup of the data contained on the subject servers on that day (as opposed to merely an incremental backup of the subject servers). If only incremental backup tapes have been retained for a given month, then all such incremental tapes shall be retained. All Backup Tapes other than those specifically required to be preserved pursuant to this paragraph and paragraph 3 below may be recycled, overwritten, or erased, as the case may be, pursuant to Defendant's and Plaintiff's otherwise applicable retention schedule.

**3.** All electronic information or data archived or backed up during the period from January 1, 2000, through March 1, 2008, as part of a special backup, i.e., a backup made other than in the ordinary course of business by Defendant or Plaintiff, whether due to system upgrade, transition planning, system migration, disaster recovery planning, or any other reason, that potentially contains potentially discoverable electronic information shall be securely retained, to

the extent that they currently exist, for the remainder of the litigation.

**4.** All current or legacy software and hardware necessary to access, manipulate, print, etc., potentially discoverable electronic information that either is "live" or has been archived or backed up shall be securely retained, to the extent that they currently exist, for the remainder of the litigation.

**5.** Defendants and Plaintiff shall circulate retention notices designed to ensure the preservation of potentially discoverable electronic and other information to those employees potentially possessing such information. Thereafter, Defendant and Plaintiff shall quarterly re-notify their employees of their continuing obligation to preserve such information.

**6.** Defendant and Plaintiff shall take the following measures to secure and retain, to the extent that it exists, the potentially discoverable electronic information that is on the desktop and laptop hard drives of their respective employees. Either (1) hard drives containing potentially discoverable electronic data shall be retained with all potentially discoverable electronic data contained therein retained intact; or, (2) employees shall be instructed to copy all potentially discoverable electronic information to a secure, backed-up network storage device or backup medium for the remainder of the litigation, making all reasonable efforts to retain all meta-data (file creation dates, modification dates, etc.) associated with the potentially discoverable electronic information at issue. The periodic retention notifications disseminated pursuant to paragraph 5 above shall advise employees potentially possessing potentially discoverable electronic information of their obligation to store discoverable electronic information on a secure, backed-up network storage device or backup medium to ensure its preservation and instruct such employees in the manner of doing so in accordance with this paragraph.

**7.** Plaintiff, within 15 days of receiving the list of business units referred to below, shall identify by name, title, or departmental category, employees of Defendant for which the Defendant shall be responsible for maintaining the hard drive, or a mirror-image copy (i.e., a bit-by-bit copy) of such hard drive, during the pendency of this litigation. Defendant, within 15 days of receiving the list of business units referred to below, shall identify by name, title, or departmental category, employees of Plaintiff for which the Plaintiff shall be responsible for maintaining the hard drive, or a mirror-image copy (i.e., a bit-by-bit copy) of such hard drive, during the pendency of this litigation. In no event shall the number of computers subject to the provisions of this paragraph be greater than 35 for Defendant and Plaintiff. The hard drives or image copies of such hard drives preserved pursuant to this paragraph shall be labeled to identify the employee who primarily used the computer associated with that hard drive. <u>To facilitate the identification of the appropriate employees, the parties will provide to each other identification by business unit and positions the employees they reasonably believe could have potentially discoverable electronic information</u>. The parties will meet and confer in good faith and exchange additional information as may be necessary to facilitate the identification, and limit the number, of employees for whom the provisions of this paragraph shall be applicable.

**8**. To the extent that Defendant or Plaintiff have implemented a system for the purpose of preserving external e-mails (e-mails sent to or received by Defendant's or Plaintiff's employees) in an easily accessible form, other than an e-mail server or the Backup Tapes identified in paragraph 2 or 3 above, all e-mails that were created during the period from January 1, 2000, through March 1, 2008, that contain potentially discoverable electronic information, and that are stored on any such system as of the date hereof, shall be preserved during the pendency of this litigation.

**9.** Within 45 days, Defendant and Plaintiff will provide written answers to the best of their ability to the questions concerning information system and electronic document retention practices. Should any party believe it cannot in good faith answer any of the questions, the parties shall confer to resolve any disputes and, if necessary, seek Court intervention.

**10.** By agreeing to preserve potentially discoverable electronic information in accordance with the terms hereof, Defendant and Plaintiff are not waiving any objection to the ultimate discoverability of such information at such point when discovery is authorized in these actions.

**11.** Nothing herein shall be deemed to affect the Defendant's and Plaintiff's obligations to preserve hardcopy documents pursuant to the Court's Case Management Order. If counsels learn that potentially discoverable hardcopy documents were destroyed by a party subsequent to being named as a party in, and receiving a copy of, a complaint pertaining to that public offering, counsel for such party shall notify opposing counsel in writing of such destruction within two weeks of learning so.

## **Standard for Discovery of Electronic Documents**

**1.** The parties shall exchange the following information:

- A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities (see infra ¶5).

- A list of each relevant electronic system that has been in place at all relevant times and a general description of each system, including the nature, scope, character, organization, and formats employed in each system. The parties should also include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility. Electronic documents of "limited accessibility" may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for

which retrieval involves substantial cost.

- The name of the individual responsible for that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above (see infra ¶5).
- The name of the individual who shall serve as that party's "e-discovery liaison" (see infra ¶2).
- Provide notice of any problems reasonably anticipated to arise in connection with e-discovery.

The parties shall either agree on a date by which this information will be mutually exchanged or submit the issue for resolution by the court at the Rule 16 scheduling conference.

**2.** E-discovery liaison. To promote communication and cooperation between the parties, each party to a case shall designate a single individual through which all e-discovery requests and responses are made ("the e-discovery liaison"). Regardless of whether the e-discovery liaison is an attorney (in-house or outside counsel), a third-party consultant, or an employee of the party, he or she must be:

- Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions;
- Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues; and
- Prepared to participate in e-discovery dispute resolutions.

The court notes that, at all times, the attorneys of record shall be responsible for compliance with e-discovery requests; however, the e-discovery liaisons shall be responsible for

11

organizing each party's e-discovery efforts to ensure consistency and thoroughness and, generally, to facilitate the e-discovery process.

**3.** Timing of e-discovery. Discovery of electronic documents shall proceed in a sequenced fashion.

- After receiving requests for document production, the parties shall search their documents, other than those identified as limited accessibility electronic documents, and produce responsive electronic documents in accordance with Fed. R. Civ. P. 26(b)(2).

- Electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed. Requests for information expected to be found in limited accessibility documents must be narrowly focused with some basis in fact supporting the request.

- On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

**4.** Search methodology. If the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method that might affect their ability to conduct a complete electronic search of the electronic documents. The parties shall reach agreement as to the method of searching and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. The parties also shall reach agreement as to the timing and conditions of any additional searches that may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g., time frames, fields, document types).

**5.** Format. Electronic documents shall be produced to the requesting party as hard copies. However, if the parties agree, image files (e.g., PDF or TIFF) may be produced. When the image file is produced, the producing party must preserve the integrity of the electronic documents contents (i.e., the original formatting of the document, its metadata and, where applicable, its revision history). After initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format.

**6.** Retention. Within the first thirty (30) days of discovery, the parties should work toward an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic documents. To avoid later accusations of spoliation, a Fed. R. Civ. P. 30(b)(6) deposition of each party's retention coordinator may be appropriate.

The retention coordinators shall:

• Take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that electronic documents maintained by the individual custodians shall not be altered.

• Provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments; e-mails and attachments filtered out by such systems shall be deemed nonresponsive so long as the criteria underlying the filtering are reasonable.

• Within seven (7) days of identifying the relevant document custodians, the retention coordinators shall implement the above procedures and each party's counsel shall file a statement of compliance as such with the court.

**7.** Privilege. Electronic documents that contain privileged information or legal work product shall be immediately returned if the documents appear on their face to have been

inadvertently produced or if there is notice of the inadvertent production within thirty (30) days of such.

**8.** Costs. In general, the costs of discovery shall be borne by each party. The court, however, will apportion the costs of electronic discovery upon a showing of good cause.

**9.** Discovery disputes and trial presentation. At this time, discovery disputes shall be resolved and trial presentations shall be conducted consistent with each individual judge's guidelines.

### Plaintiff's Electronic Data Disclosure

As of the date of the filing of this Report, Plaintiff has yet to provide Defendants with electronic data discovery disclosure.

### ISSUES RELATING TO CLAIMS OF PRIVILEGE OR OF PROTECTION AS TRIAL PREPARATION MATERIAL

The parties agreed that the assertion of attorney-client privilege would be addressed at the time of deposition.

### Confidentiality Stipulation and Protective Order

At the July 7, 2008, in-person conference between the parties, Defendants proposed that the parties enter into a stipulation and order governing confidentiality to protect the privacy of personal information of individuals and confidential business, financial, or trade secret information (including third-parties) that may be subject to disclosure or discovery. Plaintiff indicated his willingness to consider a confidentiality agreement to cover specific trade secrets and believes that any such information should be considered on a case-by-case basis.

At the August 14, 2008, in-conference between the parties, Defendants provided Plaintiff with a signed copy of the Confidentiality Stipulation and Protective Order (hereinafter also "CSPO"); and, Plaintiff provided Defendants with a copy of a proposed privilege provision.

Plaintiff's proposed privilege provision was similar to the privilege provision in Defendants' CSPO. Defendants' CSPO also requires that the parties, absent a claim of inadvertent production and request for return, "immediately return documents if the documents appear on their face to have been inadvertently produced."

As of the date of the filing of this Report, Plaintiff has not agreed to enter into the Confidentiality Stipulation and Protective Order.

Date: August 19, 2008

Respectfully submitted,

| COUNTY OF SUFFOLK | RICHARD TODD HUNTER, ESQ. |
|---|---|
| By_____<br>Leonard G. Kapsalis, Esq. (LKG5852)<br>Assistant County Attorney<br>Suffolk County Attorney<br>H. Lee Dennison Building<br>100 Veterans Memorial Highway<br>P.O. Box 6100<br>Hauppauge, NY 11788-0099<br>(631) 853-4851<br>*Counsel for Plaintiff County*<br>*of Suffolk* | By /s/ Richard Todd Hunter<br>Richard Todd Hunter, Esq. (RH9052)<br>P.O. Box 337<br>Sagaponack, NY 11962<br>(631) 258-0650<br>*Counsel for Defendants Management Systems*<br>*Corp. and Suffolk Research Service, Inc.* |